UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN HANCOCK, on behalf of himself and other persons similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AAA GALVANIZING - PEORIA, INC. and AZZ INC.,<br><br>　　　　　Defendants. | Case No.: 1:21-cv-4890<br><br>Hon. Judge Charles R. Norgle, Sr. |

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**

After an all-day mediation, the Parties in this case came to a class action settlement. The terms were straightforward. Defendants agreed to pay $674,661 into a settlement fund to resolve the claims all class members. Plaintiff's incentive award, attorneys' fees, and claims administration costs were to be paid from the settlement fund. The remainder of the fund was to be distributed among class members. The parties executed a term sheet agreement memorializing these terms. Four weeks later, Defendants told Plaintiff that they had changed their mind. Rather than pay $674,661 into a settlement fund as promised, Defendants were only willing to pay $546,942. The reason, Defendants said, was because their calculation of the class size had been incorrect: there were actually 656 class members, not 790.

Plaintiff now moves to enforce the Parties' settlement agreement.

**Background**

This is a putative class action case under the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq.* (the "BIPA"). Plaintiff alleges that in the course of his employment the Defendants (hereafter collectively referred to as "AZZ") required him and other class members

1

to scan their biometric information each day when "clocking in" and "clocking out" of work. *See* Dkt. 1-1, Plaintiff's Complaint ("Compl.") at ¶ 3. Plaintiff alleges violations of three different subparts of the BIPA. He alleges (i) that AZZ did not promulgate a written policy with respect to the retention and destruction of biometric data; (ii) that AZZ collected class members' biometric information without their informed consent; and (iii) that AZZ did not maintain class members' information in a sufficiently secure manner. Compl. ¶¶ 34-36.

Plaintiff's case was initially filed in Will County, Illinois. It was subsequently removed to this Court by AZZ, in part on the basis that there were 790 class members. Dkt. 1, ¶ 17, n. 2. AZZ then moved to stay the case, which the Court granted. Dkt. 9. Thereafter, the parties began to discuss settlement. Pursuant to these discussions, the parties agreed to mediate the case with Professor Lynn Cohn of Northwestern Law School. On June 21, 2022, after a full day of mediation, the parties came to a settlement—which they memorialized in a term sheet agreement and signed that same day. *See* **Exhibit 1**. The principle settlement terms were that AZZ would pay $674,661 into a settlement fund to resolve the claims of all class members, **Exhibit 1** ¶ 3, Plaintiff's incentive award, attorneys' fees, and costs were to be paid from the settlement fund, *id.* ¶ 4, and the remainder of the fund was to be distributed among class members. *Id.* ¶ 9.

On July 29, 2022 AZZ indicated that it was no longer willing to pay $674,661, because it had recalculated the class size and found that it was smaller than it previously thought. Instead, AZZ told Plaintiff that it was only willing to pay $546,942. Thereafter, the Parties unsuccessfully tried to resolve their dispute.

This motion now follows.

## Law

Enforcement of settlement agreements is governed by state contract law. *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004). Here, the parties created their settlement agreement in the state of Illinois, so Illinois contract law controls. *In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011). Under Illinois law, a settlement agreement is enforceable if there was "a meeting of the minds or mutual assent to all material terms." *Beverly v. Abbott Lab'ys*, 817 F.3d 328, 333 (7th Cir. 2016). The Seventh Circuit has observed that the term "meeting of the minds" is an "often deceptive…metaphor." *Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (finding that a "meeting of the minds" is "determined by reference to what the parties expressed to each other in their writings, not by their actual mental processes."). Thus, the inquiry does not focus on the question of whether the subjective minds of the parties have been met, but on their outward expression of assent as evidenced by the language used. *See Winforge, Inc. v. Coachmen Industries, Inc.*, 691 F.3d 856, 875 (7th Cir. 2012); *Rain v. Rolls–Royce Corp.*, 626 F.3d 372, 382 (7th Cir. 2010); *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009); *Sally Beauty Co., Inc. v. Nexxus Products Co., Inc.*, 801 F.2d 1001, 1004 (7th Cir. 1986).

## Argument

Here, the Parties respective "expressions of assent" in the term sheet are clear. The term sheet unambiguously states that "Defendant will pay $674,661 into a settlement fund." **Exhibit 1** ¶ 3 (parentheticals omitted). The settlement fund is to be distributed among class members, *id*. ¶ 9, after the deduction of attorneys' fees, claims administration costs, and incentive award payments. *Id*. ¶ 4. The parties' agreement does not provide for a downward modifier of the settlement fund if the class size turns out smaller than the term sheet's estimate of 790 class

3

members. The parties easily could have agreed to such a contingency, as evidenced by their specific agreement to an *upward* modifier of the settlement fund in the event that class size was *larger* than the term sheet's estimate of 790 class members. *See* **Exhibit 1** ¶ 3.

Despite this clear, unequivocal language, AZZ believes that the Parties' settlement agreement requires a downward modifier of the settlement fund because the final tally of class members is less than 790 people. In support of this belief, AZZ relies on a sentence in Paragraph 3 of the term sheet, which describes how the Parties came to agree on the settlement fund—that is, by multiplying two different categories of class members by a negotiated amount per person.[1] Yet this description does not, by itself, reflect any sort of agreement between the parties to modify the settlement fund downward—and there is no other language in the term sheet that supports that reading, either.

If AZZ insists that it should not have to pay class members the promised sum of $674,661, its only recourse is to argue that the Parties' agreement should be rescinded. In support of that argument, it may argue that its calculation of class members constituted a mistake. "Under Illinois law, rescission of a contract due to either mutual mistake or unilateral mistake is permitted if the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." *Al Maha Trading*

---

[1] The full sentence reads: "The Settlement Sum represents $531 for each Settlement Class Member who has signed an AZZ Biometric Information Security Policy which includes a waiver of BIPA claims, and $950 for each Settlement Class Member who has not signed an AZZ Biometric Information Security Policy including a waiver of BIPA claims, based on an understanding that the Settlement Class consists of approximately 181 individuals who have signed the waiver and 609 individuals who have not signed the waiver."

4

*& Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 944 (N.D. Ill. 2013) (citing cases) (quotation omitted).

Yet AZZ cannot meet this standard. For one, the enforcement of the Parties' agreement is not unconscionable. In Illinois, "[a] contract is unconscionable when, viewed as a whole, it is improvident, oppressive, or totally one-sided." *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999) (internal quotation marks and citation omitted). Here, the agreement that Plaintiff seeks to enforce is one that was *negotiated by AZZ. Cf. Zippysack LLC v. Ontel Prod. Corp.*, 182 F. Supp. 3d 867, 873 (N.D. Ill. 2016) (holding that where a party believed a settlement agreement was an "acceptable tradeoff" to ending a lawsuit, it cannot later argue that that the settlement agreement was unconscionable). Indeed, there is nothing "totally one-sided" about the Parties' term sheet. It is an arms-length agreement to resolve a BIPA class action negotiated by AZZ and its counsel.

The *Zippysack* case is instructive. There, the parties reached a settlement agreement whereby the plaintiff agreed to dismiss its suit and the defendant agreed to sell off its remaining inventory of "no more than approximately 80,000" units of a product that was the subject of the parties underlying patent dispute. *Zippysack* at 872. After the parties came to their agreement, the defendant notified the plaintiff that it had miscalculated its remaining inventory— it was actually 119,432 units, not 80,000—and that defendant intended to sell off those extra units. *Id.* at 869. In response, the plaintiff moved to enforce the parties' settlement agreement. *Id.* at 867. The Court found that defendant's promise to sell "no more than approximately 80,000" units was "unambiguous." *Id.* at 872. The Court further found that defendant's mistake-of-fact defense was unavailing, and that defendant was "stuck with the terms of the contract that it negotiated and signed." *Id.* at 873.

In this case, the Parties' agreement unambiguously states that AZZ will pay $674,661 towards a settlement fund to resolve class members' claims. Like the defendant in *Zippysack*, AZZ's error in calculation does not give it license to escape the agreement it signed. AZZ failed to include any language in the Parties' agreement entitling it a downward modifier of the settlement fund if the class size turned out to be less than 790—and there is simply no language in the Parties' settlement agreement that supports that premise.

For the foregoing reasons, the Court should grant Plaintiff's motion to enforce the Parties' settlement.

Dated: September 30, 2022

*Respectfully submitted*:

*/s/ Roberto Luis Costales*
Roberto Luis Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Tel: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiff*

6