UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HANCOCK, on behalf of himself and other persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 21 C 4890 |
| AAA GALVANIZING – PEORIA, INC. and AZZ INC., | ) ) ) ) | Judge Charles P. Kocoras |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the parties' dueling motions to enforce a settlement. After months of negotiations and an all-day mediation, the parties in this putative class action reached a settlement and executed a term sheet wherein Defendants, AAA Galvanizing – Peoria, Inc. and AZZ Inc., agreed to pay $674,661 into a settlement fund to resolve the claims of all class members. The term sheet explains that the settlement amount was calculated based on a class size of 790; however, Defendants later discovered the final class size was 656. Defendants subsequently claimed, based on this new class size, they only need to pay $546,942. Plaintiff moved to enforce the settlement agreement and Defendants filed a counter-motion to enforce the same based on their recalculation of the settlement sum using the final settlement class size. For the following reasons, the Court grants Plaintiff's motion and denies Defendants' counter-motion.

**STATEMENT**

District courts have the authority to "enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Local contract law—here, Illinois law—governs issues regarding the formation, construction, and enforceability of the settlement agreement in this case. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). Under Illinois law, a settlement agreement is enforceable if there was "a meeting of the minds or mutual assent to all material terms." *Beverly v. Abbott Lab'ys*, 817 F.3d 328, 333 (7th Cir. 2016). "Although the cases often use the phrase, 'meeting of the minds,' as a handy shorthand, the language is misleading if taken literally." *All. for Water Efficiency v. Fryer*, 2014 WL 5423272, at *6 (N.D. Ill. 2014) (citing *Laserage Tech. Corp. v. Laserage Lab'ys, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992)). A contracting party cannot expect that the other party will "peek into" the other's "mind and discover" that it had a different view of the terms than stated in the contract. *Aeroground, Inc. v. CenterPoint Properties Tr.*, 738 F.3d 810, 813 (7th Cir. 2013). Thus, it is the "objective manifestation of intent that controls whether a contract has been formed." *Urban Sites of Chi., LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 51.

A standard principle of contract law is that courts will not disturb an unambiguous agreement. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, but it is not rendered ambiguous simply because the parties disagree upon

its proper construction." *Id.* Here, both parties agree the term sheet is unambiguous, yet they disagree as to the settlement sum owed.

> Paragraph 3 of the term sheet provides:
>
> Defendant will pay $674,661 (the "Settlement Sum") into a settlement fund (the "Settlement Fund"). The Settlement Sum represents $531 for each Settlement Class Member who has signed an AZZ Biometric Information Security Policy which includes a waiver of BIPA claims, and $950 for each Settlement Class Member who has not signed an AZZ Biometric Information Security Policy including a waiver of BIPA claims, based on an understanding that the Settlement Class consists of approximately 181 individuals who have signed the waiver and 609 individuals who have not signed the waiver. The Parties reserve the right to rescind this agreement should the final count of Settlement Class Members exceed 790 persons, unless Defendant agrees to increase the Settlement Sum by an amount proportionate to the final count of Settlement Class Members (*i.e.*, $950 or $531 multiplied by the final count of Settlement Class Members, taking into account whether the individuals have or have not signed a waiver).

Dkt. # 20-1, ¶ 3.

Plaintiff argues the parties agreed upon a sum certain, $674,661, as stated in the term sheet. But in Defendants' view, the parties did not agree to a fixed settlement sum, but instead agreed to a per-class-member amount that would then be multiplied by a final class size which Defendants had yet to tally at the time the term sheet was signed. Defendants point to Paragraph 7 of the term sheet, which requires Defendants to produce a list of all persons within the settlement class. According to Defendants, interpreting the contract as Plaintiff does would render the accounting required by Paragraph 7 superfluous. Defendants say there would be "no need for an accounting to determine the 'final count of Settlement Class Members' [referenced in Paragraph 3] if

3

the final count did not matter in determining the final Settlement Sum." Dkt. # 26, at 10.

Not so, says Plaintiff, and the Court agrees. Determination of the final count of class members is necessary because the parties explicitly reserved the right to rescind the agreement in the event that the final count exceeded 790 class members. The parties did not, however, reserve the right to rescind the agreement or recalculate the amount owed if the final count was less than 790 class members. Plaintiff's reading of Paragraph 7 is not "nonsensical," as Defendants claim.

The terms of the settlement agreement are clear and certain: Defendants agreed to pay $674,661 into the settlement fund to resolve the claims of all class members. The parties should proceed accordingly.[1]

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion to Enforce Settlement [20] and denies Defendant's Counter-Motion [25]. It is so ordered.

Dated: November 14, 2022

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

---

[1] Naturally, this settlement remains subject to the Court's preliminary and final approval, but that is a different matter for a different day.